CLOVIS SOUCY

*v.*

THE PEOPLE *ex rel.* Nicholas McCracken.

*Filed at Mt. Vernon January 22, 1885.*

1. OFFICER—*holding over until his successor is elected and qualified.* A person elected to an office for a stated time, and until his successor should be elected and qualified, may lawfully hold over until his successor is elected, etc., without being guilty of usurpation of office.

2. ELECTIONS—*fraud and violence—as affecting the rights of one seeking to profit thereby.* A person will not be allowed to maintain *quo warranto* against an officer holding over, on the ground that the former claims to have been elected and to have qualified as his successor, when it appears from the evidence that the only title of the relator to the office was acquired through fraud and violence at the polls. In such case the court will not aid him in attempting to receive the emoluments of the office.

3. At an election for supervisor, three persons came to the window where votes were taken, and offered their ballots and affidavits, when the partisans of one of the candidates knocked them down and drove them away, and would not allow any one to vote except for their candidate, and thereby deterred others from offering to vote, and the votes of the three persons so driven away were received by one of the judges at a back door, which, if counted, reëlected the then present supervisor. On *quo warranto* by the candidate against whom those three votes were counted, to oust the incumbent, it was *held*, that the relator could not be allowed to show that the three persons against whom the violence was used were not legal voters; as that was a question for the judges of the election to decide, and not for the people, or partisans of the candidate, and his partisans having prevented such decision, he should not be allowed to raise that question.

APPEAL from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

Mr. G. KOERNER, and Mr. JOHN B. BOWMAN, for the appellant.

Mr. R. A. HALBERT, and Mr. M. MILLARD, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

On the 3d day of March, 1884, an election was held in the village of Cahokia, for a supervisor, under laws that seem to be especially applicable to that village. It has been held by this court in *Bernier* v. *Russell*, 89 Ill. 60, the election law governing political elections has no application to elections to be held for village officers. No previous registration of voters is necessary, nor is any ballot-box essential. Such election may be by ballot, or *viva voce*, as may be determined by the judges of election, or, perhaps, by the villagers themselves. It is a matter of no consequence which mode is adopted. The essential thing is, that every villager having the legal qualifications to do so may have an opportunity to vote, and when he has voted, his vote should be counted.

At the election held on the 3d day of March, 1884, there were but two candidates for the office of supervisor,—viz, the relator, Nicholas McCracken, and the respondent, Clovis Soucy. The judges of the election made a certificate, in which they stated, in substance, that at such an election, of the total number of voters who voted at such election, including the three voters who were driven away by outside parties from the front window, and who thereupon voted at the back door of the polling place, the respondent, Clovis Soucy, received thirty votes for the office of supervisor, and relator, Nicholas McCracken, received twenty-nine votes for the same office, and that accordingly Clovis Soucy was elected supervisor. It is shown that the three votes received at the back door of the room occupied as a polling place were never deposited in the ballot-box used on that occasion, as were all the other votes cast at such election, and it is insisted for that reason they should not be counted. Rejecting these three votes, the relator would have a majority of all the votes cast, and therefore claims that he was duly elected supervisor. Each candidate attempted to qualify by taking the usual oath

of office, and giving the bond or bonds required by law, but whether either or both of them conformed to the law in so doing will not become material, in the view taken of the case. As respondent, Soucy, had previously been supervisor, and was in possession of such office, he seems to have continued therein, and the information in this case, in the nature of a *quo warranto*, was then filed in the name of the People, on the relation of McCracken, commanding respondent, Soucy, to show cause why he had usurped, and continued to usurp and hold, the office of supervisor. By way of justification respondent pleaded, in the first place, first, alleging his own election as supervisor of the village on the first Monday of March, 1884, for the period of two years; that he had received the certificate from the judges and clerks of that election, of his own election, and that he had since qualified, and has been acting as such supervisor; and second, denying the election and qualification of relator to the same office. Afterwards, respondent filed two other pleas, by way, also, of justification, in one of which he alleged his election and qualifying to the office in question on the first Monday in March, 1882, for two years, and until his successor should be elected and qualified, and that no one has since been elected, and no one has qualified as such supervisor since that time, and in the other he alleged his election and qualifying to the office in question on the first Monday in March, 1880, for two years, and until his successor should be elected and qualified, and that no one has since been elected, and no one qualified as such supervisor since that time. Issues were formed upon all these pleas, and on the trial the circuit court pronounced a judgment of ouster.

There is one reason, not affecting the merits of this case, however, why the present judgment can not stand. The affidavit filed by the respondent for a continuance was sufficient in every respect, and as the evidence sought was pertinent, the court should have either continued the case or required

the relator to admit it, and allow the same to be read as evidence. The failure to do so was clearly error.

But the judgment of reversal need be placed on no technical ground. There is no question made that respondent was duly elected and qualified as supervisor of the village on the first Monday of March, 1882, for the period of two years, and until his successor should be elected and qualified, and unless a successor has since been elected and qualified he can continue to exercise the functions of such office. Conceding, then, the fact respondent has shown lawful right to the office of supervisor, he can not be guilty of usurpation of its functions. The relator claims he was elected the successor of respondent at the election held in the village on the first Monday of March, 1884, and that he has since qualified. Amid the circumstances proven in this case it would be inequitable to permit the relator to have the relief sought, and the law will afford him no aid to secure an office the only title to which, it appears from the evidence, he acquired through fraud and violence at the polls.

It appears from the evidence in the record, that at the election at which relator claims to have been elected the successor to respondent, when the three persons came to vote whose ballots were not placed in the ballot-box, they were assaulted by the partisans of the relator and driven from the front window where voters were expected to hand in their ballots, and one of the judges testified that one man stood at one side of the window, that another stood at the other side, and when the three voters came up one of them said, "knock down * * * he is a stranger here;" and that he was about to take the ticket and affidavit from one of them at the window when they knocked him into the middle of the road; "they knocked him in the street, and they went around to the back door and handed me the affidavits and ticket, and I took them." All the judges of the election testified substantially to the same fact. It is said these three persons

were not legal voters, and for that reason their votes ought not to have been received or counted. That was a question for the judges of the election to determine, and not for the people on the outside. Had there been no interference by the alleged partisans of the relator, the legality of the votes offered by these three persons could have been passed upon by the judges, and if found lawful they would have been deposited in the ballot-box with other ballots; or if found illegal, they would, no doubt, have been rejected. Having prevented by actual violence that question from being passed upon, it does not now lie in the mouth of relator to say they were not legal voters. The tribunal established by law for that purpose ought to have been suffered to decide that question for themselves in a lawful way. The respondent offered to prove by witnesses whose names are given in the affidavit for continuance,—and it will be presumed he could have done so had he been allowed an opportunity,—that the adherents of the relator were during the day very noisy and turbulent; that they took and held possession of the window at which the voting was to be done, in front of the building where the election was held, and insulted and abused and intimidated those desiring to vote, or did vote, for respondent, and that from and after four o'clock in the afternoon the adherents of relator obstructed the approach to the window, and allowed none to vote for respondent; that John B. Vien and his son were legal voters in the village at such election, but fearing to be insulted, abused and injured if they attempted to exercise their franchise at the front window, went to the back door and handed their ballots to the judges of the election; that Vien saw the adherents of relator attack and assault and beat one Henry Brown, a resident of Cahokia for about eighteen years or more, because he attempted to vote for respondent; that the witness Vien saw other inhabitants desirous of voting for respondent, assaulted and beaten by partisans of relator; that the crowd of relator's adherents at the polls were heavily

8—113 Ill.

armed,—many carried clubs, and at least twenty of them pistols, which were flourished, while none of respondent's adherents displayed arms of any sort, and that Vien would testify that the three persons whose ballots were taken were inhabitants of Cahokia, and under the law entitled to vote at such election. The election, under the circumstances proven and offered to be proven, can find no sanction in the law, and an officer claiming to have been elected at such an election will get no aid from the courts to get possession of such office. Fraud and violence in conducting an election will not be tolerated. A title to an office arising out of such an election will find no support in the law, and the courts will be careful not to lend their aid to give a party so elected the emoluments of such office. Surely courts will not aid a party to avail of that which he has obtained through wrong and violence, in utter disregard of public and private rights. Although not analogous, the previous decisions of this court sustain, to some extent, this view of the law: *People* v. *Waite,* 70 Ill. 25; *People* v. *Moore,* 73 id. 132; *Frick* v. *Trustees,* 99 id. 167.

It will not, therefore, be necessary to determine whether respondent was elected his own successor at the election in March, 1884. It is certain no one, in the language of the plea, whose election the law will tolerate, has been elected his successor, and he may therefore hold his office under the law until his successor shall have been elected and qualified. In view of what has been and what was offered to be proven, what was said by this court in *People* v. *Waite,* may here be repeated: "These facts make it inequitable that he (relator) should have the remedy (*quo warranto*) sought," and the circuit court, in the exercise of a sound discretion, ought to have found defendant not guilty.

The judgment of the Appellate Court will be reversed, and the cause remanded, with direction to reverse the judgment of the circuit court and remand the cause.

*Judgment reversed.*